1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

WILLIAM E. DUNCAN,

9

Plaintiff,

10

v.

11

JOSEPH LEHMAN,

12

Defendant.

13

Case No. C04-5633RBL

REPORT AND
RECOMMENDATION

**NOTED FOR:
JUNE 2nd, 2006**

14

        This 42 U.S.C. § 1983 Civil Rights action has been referred to the undersigned Magistrate Judge

15

pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR

16

3, and MJR 4.  Before the court is Defendant's motion for summary judgment.  (Dkt. # 32).  Plaintiff,

17

through counsel,  has responded.  (Dkt. # 33 through 36).  Defendant has replied.  (Dkt. # 37).

18

STANDARD

19

        Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings,

20

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

21

that there is no genuine issue of material fact and that the moving party is entitled to judgment as a

22

matter of law."  Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law

23

when the nonmoving party fails to make a sufficient showing on an essential element of a claim on

24

which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

25

(1985).

26

        There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a

27

28

REPORT AND RECOMMENDATION - 1

1   rational trier of fact to find for the nonmoving party.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

2   <u>Corp.</u>, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative

3   evidence, not simply "some metaphysical doubt.").  *See also* Fed. R. Civ. P. 56 (e).  Conversely, a

4   genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed

5   factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  <u>Anderson v.</u>

6   <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 253 (1986); <u>T. W. Elec. Service Inc. v. Pacific Electrical</u>

7   <u>Contractors Association</u>, 809 F.2d 626, 630 (9th Cir. 1987).

8          In order to state a claim under 42 U.S.C. § l983, a complaint must allege that (l) the conduct

9   complained of was committed by a person acting under color of state law and that (2) the conduct

10  deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United

11  States.  <u>Parratt v. Taylor</u>, 45l U.S. 527, 535 (l98l), <u>overruled on other grounds</u>, <u>Daniels v. Williams</u>,

12  474 U.S. 327 (1986).  Section l983 is the appropriate avenue to remedy an alleged wrong only if

13  both of these elements are present.  <u>Haygood v. Younger</u>, 769 F.2d l350, l354 (9th Cir. l985), <u>cert.</u>

14  <u>denied</u>, 478 U.S. 1020 (l986).

15                                              <u>FACTS</u>

16         A.     Undisputed facts.

17         Plaintiff having been convicted of communicating with a minor for an immoral purpose and

18  indecent exposure sentenced an became an inmate housed in the Washington state correctional system.

19  Because of the nature of plaintiff's conviction he was not eligible for a reduction of his sentence by

20  earned time or good time in the normal manner.  Instead, pursuant to RCW  9.94A 728 (2) plaintiff

21  became eligible for possible release on community custody placement "in lieu of earned release time."

22  To be eligible for community placement an inmate must obtain the Department of Corrections approval

23  of a release plan.  The parties agree that plaintiff became eligible for release to community custody

24  January 3, 2003. (Dkt. # 33, page 6, Dkt. # 32, page 2).  Plaintiff's sentence expired April 4th, 2004.

25  Plaintiff was released to deputy sheriffs for civil commitment proceedings on April 1st, 2004, only three

26  days before his sentence expired.

27         Plaintiff submitted a proposed plan for release to the Boylston Hotel in November of 2002.  That

28  REPORT AND RECOMMENDATION - 2

1    plan was rejected by the Department in February of 2003 because it placed Mr. Duncan in close

2    proximity to a school.  Plaintiff concedes he is not challenging the denial of that release plan.  (Dkt. # 33,

3    page 11 footnote 3).  The record reflects a second plan being formulated for release to the Franklin Hotel.

4    (Dkt. # 32 and 33 through 36).

5            B.      Contested facts.

6            Plaintiff alleges he submitted a second plan for release in March or April of 2003.  (Dkt. # 33,

7    Page 7).  This time he proposed release to the Franklin Hotel.  Defendant contests plaintiff's assertions

8    that the plan was submitted before December of 2003.  Plaintiff states he asked two counselors, first Mr.

9    Johnson and, after he was transferred to McNeil Island, Mr. Lewandosky, to submit the plan to reside at

10   the Franklin. Neither of these persons are named defendants in this action and both deny plaintiff

11   submitted the Franklin plan to them.  (Dkt. # 32-4, declarations of Johnson and Lewandowsky).  The

12   record shows plaintiff submitting the plan to reside at the Franklin to a third counselor, Mr. Jackson in

13   December of 2003.  (Dkt. # 36-4).

14           Plaintiff contends that pursuant to a policy he was denied the ability to submit an address for

15   release because he was a sex offender being referred for civil commitment and he contends the policy

16   denied him due process of law.  In support of his position he submits a copy of a memo signed by the

17   Assistant Deputy Secretary of the Washington State Department of Corrections signed February 12,

18   2003.  (Dkt. # 35-7 memo from Anne Fiala to OCO management).

19           The memo says that the state court has told the department that an inmate must be permitted to

20   submit a plan for investigation.  The memo states that Policy 350.200 will be updated.  If an inmate has

21   been referred for civil commitment as a sexually violent predator or is found by the End of Sentence

22   Review Committee to "appear to meet definition of a sexually violent predator, the CCO must",as part of

23   the investigation,  review certain documents and if a forensic psychological report has not been done the

24   CCO will "pend [sic]" the investigation until a forensic psychological report is available for review.

25   Only after all information is reviewed may a plan be accepted or denied.  (Dkt. # 35-7, page 2).

26           Neither party submits a copy of DOC policy 350.200 showing that the policy was ever updated.

27   The copy of the policy submitted by both sides is the one effective June 25th, 2002.  (Dkt. # 32-3 and 35-

28   REPORT AND RECOMMENDATION - 3

1   6).

2          There is evidence in the record showing that in December of 2003 Mr. Jackson referred

3   plaintiff's plan for release to the Franklin to a Risk Management Specialist, Mrs. Farr.  (Dkt. # 36-5).  A

4   December 24th, 2003 memo from Mrs. Farr to plaintiff indicates that "Because you are special, there is

5   another step in your process for release.  It is because you need to be evaluated before you can be

6   released and we never know when that will happen."  (Dkt. 36-8).  The memorandum goes on to indicate

7   family members should not spend money reserving a room at that point in time and that release to the

8   Franklin would be part of the transition plan.

9          Two subsequent memorandum from Mrs. Farr show plaintiff's plan, including the address to the

10  Franklin had been accepted and was under consideration or pending.  The two memorandum state that no

11  decision would be made until the plan was cleared by the End of Sentence Review Committee and a

12  forensic psychological evaluation had been conducted.  (Dkt. # 36-9 and 36-10).

13                                              DISCUSSION

14         The only named defendant in this action is Joseph Lehman, former Secretary of the Department

15  of Corrections.  Defendant argues:

16         1.      Plaintiff has no entitlement to release prior to expiration of his sentence.

17         2.      Plaintiff has no liberty interest in early release.

18         3.      Plaintiff has failed to show personal participation by defendant Lehman.

19         4.      Plaintiff's claims are barred by the Eleventh Amendment.

20         5.      The Defendant is entitled to qualified immunity.

21  (Dkt. # 32, page 2).

22         The court today does not consider this case as a case of first impression. In C04-5825RBL,

23  Kistenmacher v Lehman, the court found no liberty interest in release prior to the expiration of a

24  sentence for inmates like plaintiff who received community custody "in lieu of" earned early release.

25  The court stated:

26              Washington State's complex sentencing system allows some inmates to earn time
             off their sentence by programing and good behavior while incarcerated.  Other inmates,
27           like Mr. Kistenmacher, may not earn time off their sentences but instead may become

28  REPORT AND RECOMMENDATION - 4

eligible for placement in a community under supervision in lieu of earning good time or earned time.

RCW 9.94A.728 (2) provides:

No person serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
...

(2)(a) A person convicted of a sex offense or an offense categorized as a serious violent offense, assault in the second degree, vehicular homicide, vehicular assault, assault of a child in the second degree, any crime against persons where it is determined in accordance with RCW 9.94A.602 that the offender or an accomplice was armed with a deadly weapon at the time of commission, or any felony offense under chapter 69.50 or 69.52 RCW, committed before July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;

(b) A person convicted of a sex offense, a violent offense, any crime against persons under RCW 9.94A.411(2), or a felony offense under chapter 69.50 or 69.52 RCW, committed on or after July 1, 2000, may become eligible, in accordance with a program developed by the department, for transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section;

(c) The department shall, as a part of its program for release to the community in lieu of earned release, require the offender to propose a release plan that includes an approved residence and living arrangement. All offenders with community placement or community custody terms eligible for release to community custody status in lieu of earned release shall provide an approved residence and living arrangement prior to release to the community;

(d) The department may deny transfer to community custody status in lieu of earned release time pursuant to subsection (1) of this section if the department determines an offender's release plan, including proposed residence location and living arrangements, may violate the conditions of the sentence or conditions of supervision, place the offender at risk to violate the conditions of the sentence, place the offender at risk to reoffend, or present a risk to victim safety or community safety. The department's authority under this section is independent of any court-ordered condition of sentence or statutory provision regarding conditions for community custody or community placement;

When an inmate is first transferred to the Department of Corrections, staff at the Department calculates at least three possible release dates for the inmate. The first of these dates is the maximum release date. A maximum release date is the date an inmate will be released because they have served the entire sentence imposed. The second date is an earned early release date, ERD. This is the date an inmate may be released if they earn all available sentence reductions and do not lose earned time for misbehavior. Release on this date is not automatic for all inmates. The third date the department calculates is an adjusted release date. This is the projected date when an inmate may be eligible for release if they lose no further good time or earned time. This date along with the earned early release date changes when an inmate does not earn or loses a possible reduction in their sentence. By statute an inmate cannot receive earned early release

REPORT AND RECOMMENDATION - 5

1    credits before they have been earned. "The correctional agency shall not credit the
     offender with earned release credits in advance of the offender actually earning the
2    credits." <u>See</u>, RCW 9.94A.728 (1).

3          Certain classes of inmates have periods of supervision at the end of their
     incarceration. These inmates are not allowed to earn earned early release because of the
4    nature of their crime. These inmates receive supervision by way of community
     placement or community custody "in lieu of" earned early release. Plaintiff is a person
5    whose Judgment and Sentence included community placement or community custody
     following release. Defendants contends plaintiff were not entitled to general release on
6    his earned early release date. Plaintiff has not come forward with any evidence to
     contradict this assertion. Thus, this action deals with an inmate who reached his earned
7    early release date and was not released on that date because community custody or
     community placement was imposed in the Judgment and Sentence.

8

9          Plaintiff's position is identical to Mr. Kistenmachers. The court in <u>Kistenmacher</u> analyzed the

10   due process claim and held:

11          The court begins by noting that an inmate has no constitutional right to release
     before expiration of the sentence. <u>Greenholtz v. Inmates of Nebraska</u>, 442 U.S. 1
12   (1979). Nor have the Washington state appellate courts recognized an independent
     state created interest in amassing early release credits. <u>In Re Galvez</u>, 79 Wash. App.
13   655 (1995). This does not end the court's analysis because in this case the court is not
     concerned with the granting or denial of earned early release time. Under the facts of
14   this case the plaintiff had been granted the credits or time off his sentence and was
     eligible for release, subject to the approval of the release plan by the Department of
15   Corrections and whatever public notification may be mandated by state law.

16          There are two questions this court must answer. The first question is whether
     the Due Process Clause of the 14th Amendment requires a hearing prior to denial of a
17   release plan and the second question is whether the law was clearly established that
     such a hearing was required.

18

19          The court cannot overemphasize that the interest at issue in this case must be
     a state created liberty interest and is not an interest found under the 14th Amendment
20   Due Process Clause itself. Normally the court would first determine whether there is
     in fact a state created liberty interest. The Washington State Court of Appeals found
21   there to be a "limited liberty interest" in <u>Crowder</u>, but the court did not define what a
     "limited liberty interest" is and approved post depravation remedies which only
22   included the Department helping Mr. Crowder to obtain release. <u>In Re Crowder</u>, 97
     Wash App. 598 (1999). No hearing of any type was ordered.

23          In <u>Dutcher</u> the same court emphasized it was operating under the State Rule
     of Appellate Procedure 16.4 which did not require a finding of a constitutional
24   violation and only required a finding of unlawful restraint under state law. <u>Dutcher</u>
     114 Wash. App. at FN 3 and 4; <u>Citing In Re Cashaw</u>, 123 Wash. 2d 138 (1994).
25   <u>Cashaw</u> specifically rejected the contention that procedural rules which are not
     outcome determinative create a liberty interest protected by Due Process. <u>In Re</u>
26   <u>Cashaw</u>, 123 Wn 2d. at 146. In <u>Cashaw</u> the Washington State Supreme Court
     required the Indeterminate Sentence Review Board to follow its own rules and
27   granted relief using the State Rule of Appellate Procedure 16.4. This grant of relief

28   REPORT AND RECOMMENDATION - 6

1    was not based on a finding of any constitutional violation.

2        The Washington State Supreme Court in Cashaw was careful to grant relief
     only on state grounds. Indeed, the State Supreme Court in Cashaw analyzed what is
3    needed to find a state created liberty interest and found no due process violation in
     that case. The State Supreme Court's analysis in Cashaw is instructive regarding
4    what constitutes a liberty interest and when such interests rise to the level of a state
     created liberty interest protected by the Due Process Clause of the United States
5    Constitution. This court adopts the analysis set forth by the Washington State
     Supreme Court. The court stated:

6

7        Liberty interests may arise from either of two sources, the due process
         clause and state laws. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct.
8        864, 868, 74 L.Ed.2d 675 (1983); Toussaint v. McCarthy, 801 F.2d
         1080, 1089 (9th Cir.1986), cert. denied, 481 U.S. 1069, 107 S.Ct.
9        2462, 95 L.Ed.2d 871 (1987). The due process clause of the federal
         constitution does not, of its own force, create a liberty interest under
10       the facts of this case for it is well settled that an inmate does not have
         a liberty interest in being released prior to serving the full maximum
11       sentence. Greenholtz v. Inmates of Nebraska Penal & Correctional
         Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979);
12       Ayers, 105 Wash.2d at 164-66, 713 P.2d 88; Powell, 117 Wash.2d at
         202-03, 814 P.2d 635.

13
         However, as indicated above, state statutes or regulations can create
14       due process liberty interests where none would have otherwise existed.
         See Hewitt, 459 U.S. at 469, 103 S.Ct. at 870; Toussaint, 801 F.2d at
15       1089; Powell, 117 Wash.2d at 202-03, 814 P.2d 635. By enacting a
         law that places substantive limits on official decisionmaking, the State
16       can create an expectation that the law will be followed, and this
         expectation can rise to the level of a protected liberty interest. See
17       Toussaint, 801 F.2d at 1094.

18       For a state law to create a liberty interest, it must contain "substantive
         predicates" to the exercise of discretion and "**specific directives to the
19       decisionmaker that if the regulations' substantive predicates are
         present, a particular outcome must follow**". Kentucky Dep't of
20       Corrections v. Thompson, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910,
         104 L.Ed.2d 506 (1989); Swenson v. Trickey, 995 F.2d 132, 134 (8th
21       Cir.), cert. denied, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 468
         (1993). **Thus, laws that dictate particular decisions given
22       particular facts can create liberty interests, but laws granting a
         significant degree of discretion cannot.**

23   In Re Cashaw, 123 Wn 2d at 144 (emphasis added).

24       The Department has been mandated by statute to implement a system that
     allows for the possibility of early release. For some persons the release is automatic
25   when they reach their earned early release date because they have no supervision
     following incarceration. Inmates like Mr. Kistenmacher, facing community placement
26   or community custody, can earn a potential reduction in sentence and be placed on
     community placement or community custody at the discretion of the Department of
27   Corrections.

28   REPORT AND RECOMMENDATION - 7

1          The parties may disagree whether the discretion of the Department is
unfettered or restricted with regards to what the department may consider but such
2    argument misses the point.  RCW 9.94A.728(2)(d) grants the Department the ability
and the discretion to deny a release plan for any person who would receive
3    community custody if the Department determines the plan may violate conditions of a
sentence or supervision, may place the offender at risk to reoffend, or presents a risk
4    to victim or community safety.  Thus, whatever limits have been placed on the
Department are not outcome determinative and there is no state created liberty
5    interest.  The Department still has a significant degree of discretion in granting or
denying release to community placement or community custody.  As the statute itself
6    notes "[t]he department's authority under this section is independent of any court-ordered
condition of sentence or statutory provision regarding conditions for community custody
7    or community placement."  (Dkt. # 25, Exhibit 3, page 3, RCW 9.94A.728 (2)(d)).

8          A careful reading of the Washington State Court of Appeals holding in
Dutcher shows the court was acting pursuant to state Rule of Appellate Procedure
9    16.4 and was using the lesser standard of review which did not require a finding of a
constitutional violation.  The ruling in Dutcher that the Department must follow the
10   state statutory system and consider plans on the merits does not equate to a finding of
a state created liberty interest in release and the holding in Dutcher did not eliminate
11   the Departments discretion.

12          There has been a progression in the State Court of Appeals decisions in which
their terminology and reasoning was expanding.  In Crowder the court found only a
13   "limited liberty interest."  In Re Crowder, 97 Wash. App. 598 (1999).  In Dutcher,
the court used the reasoning of Cashaw to grant relief solely on state grounds but
14   inaccurately stated the interest was a "limited but protected liberty interest."  Dutcher,
114 Wash. App. at 758.  Now, in a more recent case, the same court is citing Cashaw
15   and Dutcher for the proposition that there is a limited liberty interest protected by due
process.  In Re Liptrap, 127 Wash. App. 463, 469  (2005).  To the extent that
16   Liptrap, finds a state created liberty interest in release credits for persons subject to
community custody the cases cited do not support the proposition and the court
17   declines to follow this decision.  A potential for release based on the Department
exercising its discretion does not equate to an absolute interest in release that a person
18   with earned time and no post release supervision enjoys.

19          As noted above neither Crowder nor Dutcher found a state created liberty
interest.  Under the analysis set forth in Cashaw there is no federally protected interest
20   in this case.  The holding of Dutcher is that an agency follow its own rules and
statutes.  While in some cases that may become outcome determinative and raise to
21   the level of a state created liberty interest it is not outcome determinative in this case
because of the amount of discretion left with the Department.
22          There is not a state created liberty interest at stake in this case.  The statutes
creating the potential of community custody do not set forth any mandate that the
23   Department hold hearings and only mandate the Department consider properly
submitted release plans for persons who have reached their possible earned early
24   release date subject to community custody or community placement after release.
Accordingly the defendant's motion for summary judgment should be **GRANTED.**
25

26        This court concurs with the reasoning and holding in Kistenmacher.  The facts of this case very

27   only slightly form Mr. Kistemachers case.  In this case the Department accepted plaintiff's plan but

28   REPORT AND RECOMMENDATION - 8

1  would not render a decision until a forensic psychological report had been completed.  Neither party has

2  addressed whether the Department had the authority to demand such a report, however, the statute in

3  question indicates the Department may deny a plan if release represents "a risk to victim safety or

4  community safety."  Further the statute indicates the Departments authority in this area is "independent

5  of any court-ordered condition of sentence or statutory provision regarding conditions for community

6  custody or community placement."  RCW 9.94A.728(2)(d).

7          There is no entitlement to release prior to expiration of the sentence for persons with community

8  custody requirements,.  Further, there is no liberty interest requiring due process.  The requirement that

9  an agency follow its own rules or accept a plan for consideration is a creature of state law as noted by the

10  Washington State Supreme Court in Cashaw.  In Re Cashaw, 123 Wn 2d at 144.

11          Defendant is entitled to Summary Judgement.  The court need not consider the remaining

12  arguments or reach the issue of immunity.

13                                              CONCLUSION

14          For the reasons outlined above the undersigned recommends **GRANTING** defendant's

15  motion for summary judgment.  A proposed order accompanies this Report and Recommendation.

16          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

17  parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R.

18  Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.

19  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is

20  directed to set the matter for consideration on **June 2nd, 2006**, as noted in the caption.

21

22          DATED this 9th day of May, 2006.

23                                              */S/ J. Kelley Arnold*
                                                J. Kelly Arnold
24                                              United States Magistrate Judge

25

26

27

28  REPORT AND RECOMMENDATION - 9